IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LAQUAN STEDERICK JOHNSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:18-CV-1899-AT |
| | : | |
| ELAINE TERRY; et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER**

**I. Background and Legal Standard**

Presently before the Court is Magistrate Judge Justin S. Anand's Report and Recommendation ("R&R") [Doc. 198] recommending that the Court grant that the remaining Defendants' motions for summary judgment [Docs. 162, 163, 164, 165, 167, 169, 170, 172, 173, 174] and that this action be dismissed. Plaintiff LaQuan Johnson has filed objections in response to the R&R [Doc. 201].

A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the R&R that is the subject of a proper objection on a *de novo* basis and

any non-objected portion on a "clearly erroneous" standard. "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).

The Court adopts the procedural background and factual discussion in the R&R to which no party has objected. Briefly, Plaintiff alleges first that officials at the United States Penitentiary in Atlanta, Georgia (USP-A) housed him with dangerous inmates, despite his repeated protests, ultimately resulting in serious injury to Plaintiff, including a broken wrist and related nerve damage as well as a fractured jaw that had to be wired shut. Plaintiff further alleges that, when he complained about these housing decisions, he was placed in the Special Housing Unit ("SHU") and attacked by a guard. According to Plaintiff, he did not receive adequate medical care for his fractured jaw for over a month. Some time thereafter, prison staff stopped providing Plaintiff a liquid diet in connection with his fractured jaw, forcing him to cut the jaw wires with a fingernail clipper to allow him to eat to the extent he was able to do so. Plaintiff next alleges that he later stepped on an exposed screw and was not provided adequate medical treatment for this injury either. Finally, Plaintiff alleges that, after filing this lawsuit, he was

threatened, placed in the SHU, attacked by guards, shackled for hours, and had his cell ransacked. Based on these events, Plaintiff's surviving claims are for excessive force, for failure to protect from other inmates, and for deliberate indifference to his various medical needs.

The Magistrate Judge determined that all Defendants are entitled to summary judgment. First, all of Plaintiff's claims are brought pursuant to 28 U.S.C. § 1331/Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Magistrate Judge determined that, under the somewhat recent Supreme Court cases of Egbert v. Boule, 142 S. Ct. 1793 (2022), and Ziglar v. Abbasi, 137 S. Ct. 1843 (2017), Plaintiff's Bivens claims are not cognizable. Second, the Magistrate Judge reviewed the undisputed facts and determined that Defendants are entitled to judgment with respect to Plaintiff's medical/deliberate indifference claims because the record shows that he was simply dissatisfied with the substantial medical treatment he received, and he cannot demonstrate that the treatment he received amounted to more than gross negligence. See Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007) (indicating that claims of gross negligence are insufficient to establish deliberate indifference to serious medical needs).

**II. Discussion**

In his objections, Plaintiff first disputes the Magistrate Judge's view of Egbert as all but signaling the demise of actions brought under Bivens. Instead, Plaintiff insists that, while Egbert "may have closed the door for some plaintiffs operating on the margins of the analysis, . . . it did not foreclose Plaintiff's claims here." [Doc. 201 at 2]. Having studied the matter, the Court must reluctantly agree with the Magistrate Judge.

**A. Evolution of the Bivens Remedy**

In Bivens, the Supreme Court recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials similar to the statutory remedy available against state actors under 42 U.S.C. § 1983. See Bivens, 403 U.S. at 397. In the more than fifty years since, the Court has expressly extended the Bivens remedy only twice: first, to a claim for gender discrimination under the Fifth Amendment's Due Process Clause, see Davis v. Passman, 442 U.S. 228, 248-49 (1979), and later to a claim for deliberate indifference to a serious medical need by an inmate, see Carlson v. Green, 446 U.S. 14, 18-23 (1980).

Since 1983, the Supreme Court has been less receptive to expansion of the Bivens remedy. See Silva v. United States, 45 F.4th 1134, 1138 (10th Cir. 2022) (citing Bush v. Lucas, 462 U.S. 367, 374-80 (1983); Chappell v. Wallace, 462 U.S.

296, 298-305 (1983); United States v. Stanley, 483 U.S. 669 (1987)).  In Abbasi and Egbert, that reticence morphed into a major contraction of the Bivens remedy and transformation of Bivens jurisprudence.  In Abbasi the Court announced a two-part test for determining whether a Bivens claim should be recognized.  First, courts must ascertain whether the case presents a new Bivens context.  See Abbasi, 137 S. Ct. at 1859.  If the case differs "in a meaningful way" from the three recognized Bivens cases decided by the Supreme Court, "then the context is new." Id.  The meaning of "new context" is "broad."  Hernandez v. Mesa, 140 S. Ct. 735, 743 (2020) (quotation and citation omitted).  Second, if the case presents a "new context," the court must then consider whether "special factors" counsel against extending the Bivens remedy.  See id.  This "special factors" inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed."  Abbasi, 137 S. Ct. at 1858.  If a court concludes that there is a reason to pause before applying Bivens in a "new context" or to a new class of defendants, the court should reject the request. Hernandez, 140 S. Ct. 735 743 (2020).

The Court's decision in Egbert, "appeared to alter the existing two-step Bivens framework by stating that 'those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to

create a damages remedy.'" Silva, 45 F.4th 1134, 1139 (quoting Egbert, 142 S. Ct. at 1803). Indeed, "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." Egbert, 142 S. Ct. at 1800. The case law following Abbasi and Egbert demonstrates that even slight differences with established Bivens claims means that the context is "new" under the framework, and there is virtually no basis to conclude that the courts are better equipped than Congress to fashion a damages remedy. As the Supreme Court has now repeatedly stated, recognizing a new Bivens cause of action is "a disfavored judicial activity." Abbasi, 137 S. Ct. at 1857; Hernandez, 140 S. Ct. at 742.

**B. Plaintiff's Deliberate Indifference Claims**

In Carlson—the case most analogous to Plaintiff's medical deliberate indifference claims—the estate of a federal inmate who died following an asthma attack sued claiming that officials had been deliberately indifferent to the inmate's serious medical needs in violation of the Eighth Amendment. Carlson, 446 U.S. at 16-17 n.1. The plaintiff alleged that prison officials were aware of the inmate's chronic asthma condition and the prison's inadequate medical facilities when they chose to keep him in the facility against the advice of doctors and without competent medical attention for eight hours after an asthma attack. Id. The

Supreme Court held that the Bivens remedy was available under those circumstances. Id. at 24.

The Magistrate Judge determined that Plaintiff's deliberate indifference claims here differ in meaningful ways from Carlson, and thus constitute new Bivens contexts. Notably, Plaintiff's medical maladies were not life-threatening, there was no medical emergency, and he did not die. An important aspect of the Supreme Court's test in determining whether a Bivens remedy should be extended is the availability of alternative remedies to plaintiffs who could potentially raise a particular claim, Egbert, 142 S. Ct. at 1798, 1804, and the Carlson plaintiff, having died, could not take advantage of the administrative grievance procedures made available to federal prisoners. Accord Washington v. Fed. Bureau of Prisons, CV 5:16-3913-BHH, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022) ("[A]dministrative and injunctive relief would have a completely different application to Plaintiff's claims than to the claims in Carlson, where the failure to properly address a medical emergency proved fatal.").

Moreover, the Magistrate Judge cited to numerous cases in which courts have determined that medical deliberate indifference claims that differ from the claim raised in Carlson have been deemed to be "new contexts." [Doc. 198 at 21-22]. While Plaintiff has also cited to cases which allowed medical deliberate

7

indifference claims to proceed under Bivens, this Court's reading of Egbert indicates that those courts did not reach a result consistent with current, controlling Supreme Court jurisprudence.

The Magistrate Judge further determined, consistent with current governing Supreme Court precedent, that Congress is better suited to create a damages remedy. Federal prisoners have access to an administrative remedy program, and Congress has not expanded that remedy by creating a cause of action to pursue claims of constitutional violations and associated damages relief.

Plaintiff raises a legitimate point in noting that this Court has determined that, in this case, the administrative remedy procedures were not available to him because they acted as a dead end and/or prison administrators thwarted Plaintiff from taking advantage of them. [Doc. 107 at 27]. However, the fact that the administrative remedy process was unavailable in an isolated incident because of the incompetence or malfeasance of individual prison staff members does not persuade the Court that it would be legally authorized to recognize a new damages action at this juncture based on Egbert's restrictive remedial approach. As Egbert has stressed, Congress is generally better suited to recognize new causes of action, and it is beyond the Court's purview to question the suitability or reliability of the alternative remedy procedures that have been authorized. "So long as Congress or

the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a Bivens remedy." Egbert, 142 S. Ct. at 1807; c.f. Earle v. Shreves, 990 F.3d 774, 780 (4th Cir. 2021) ("While these alternate remedies do not permit an award of money damages, they nonetheless offer the possibility of meaningful relief and therefore remain relevant to [the court's] analysis."). The Court continues to recognize, though, that there are instances, as in this case, where the record, construed in the light most favorable to the Plaintiff, shows that Plaintiff was thwarted from effective access to an administrative remedy or any related relief.

That said, the Court also must note that the Supreme Court has held that "it is irrelevant to a special factors analysis whether the laws currently on the books afford [a plaintiff] . . . an adequate federal remedy for his injuries." United States v. Stanley, 483 U.S. 669, 681 (1987) (internal quotation marks omitted). Given the Supreme Court's mandated deference to Congress on the issue of creating a damages remedy, it is all but impossible to conclude that this Court is in a better position to create a remedy here. Put simply, even without the availability of an alternative remedy, this Court is not as well equipped as Congress to create a new cause of action. The Congressional legislative process is specifically designed to

promote consideration of a range of opinions and legislative remedial alternatives. See Egbert, 142 S. Ct. at 1803 (discussing the range of policy considerations that must be made in determining whether to create a new cause of action and concluding that "Congress is far more competent than the Judiciary to weigh such policy considerations"). However, the Court recognizes, as a matter of reality, that Congress often has great difficulty in reaching consensus regarding new legislative measures and remedies – and that difficulty translates into *no* legislative action. And in turn, this vacuum of legislative action or judicial authority impacts the capacity of federal inmates who may have suffered grievous injuries of constitutional magnitude from obtaining any meaningful relief.

**C. Plaintiff's Excessive Force and Failure to Protect Claims**

Plaintiff's claims other than his medical deliberate indifference claims are also not viable under Bivens. The Court agrees with the Magistrate Judge that Plaintiff's excessive force claim proposes to extend Bivens to a "new context." In Bivens, the plaintiff claimed that federal agents used excessive force when they manacled him and threatened his family while arresting him for narcotics violations. Bivens, 403 U.S. at 397. Here, Plaintiff claims that a prison official gratuitously applied force by twisting Plaintiff's injured wrist while he was fully compliant. In Egbert, the Supreme Court rejected applying Bivens to an excessive

force claim against a border control agent "for two independent reasons: Congress is better positioned to create remedies in the border-security context, and the Government already has provided alternative remedies that protect plaintiffs like" the one in Egbert. Egbert, 142 S. Ct. at 1804. Here, the same reasoning applies as discussed above: Congress should be the one to create remedies in the federal prison setting, and an alternative remedy exists in the prison grievance process. Under Egbert, Plaintiff's excessive force claim thus must be dismissed.

Plaintiff contends that his failure to protect claim is not unlike the failure-to-protect claim in the case of Farmer v. Brennan, 511 U.S. 825 (1994). However, in Egbert, the Court explained that it had recognized a Bivens claim in only three contexts, see Egbert, 142 S. Ct. at 1802 — these three contexts do not include Farmer or a failure-to-protect claim. The Court acknowledges that, after Abbasi, at least the Third Circuit[1] has recognized a Bivens claim for a federal prison official's failure to protect an inmate from an attack by another inmate. In Bistrian v. Levi, 912 F.3d 79 (3rd Cir. 2018), the Third Circuit held that the Supreme Court in Farmer v. Brennan, 511 U.S. 825 (1994), "recognized a failure-to-protect claim under the Eighth Amendment" for a Bivens claim. The Third Circuit noted that the

---

[1] As far as this Court can determine, the Eleventh Circuit has not directly addressed this issue post-Abbasi. The closest case found was Trevari v. Robert A. Deyton Detention Ctr., 729 F. App'x 748, 751 (11th Cir. 2018), where the Eleventh Circuit tangentially addressed the question of whether a prisoner in a private prison could raise a failure-to-protect Bivens claim when alternative remedies existed.

Court in Farmer "not only vacated the grant of summary judgment in favor of the prison officials but discussed at length 'deliberate indifference' as the legal standard to assess a Bivens claim." Bistrian, 912 F.3d at 90 (citing Farmer, 511 U.S. at 832-849).  The Third Circuit determined that holding otherwise would have the effect of overruling Farmer, and courts are admonished not to "conclude [that the Supreme Court's] more recent cases have, by implication, overruled an earlier precedent."  Bistrian, 912 F.3d at 91 (quoting Agostini v. Felton, 521 U.S. 203, 237 (1997)).

However, there are substantial reasons to doubt the current vitality of the Third Circuit's analysis.  Notably, as indicated above, the Supreme Court itself does not recognize Farmer as creating a Bivens action.  Additionally, the Bivens issue was not before the Court in Farmer.  Rather, the Court was concerned with the standard for determining whether an official had been deliberately indifferent.  See Farmer, 511 U.S. at 832 ("We granted certiorari because Courts of Appeals had adopted inconsistent tests for 'deliberate indifference.'") (citations omitted).  Rather than approving an extension of Bivens, the Supreme Court's opinion in Farmer is akin to "assuming without deciding" the Bivens issue to focus on the question presented on appeal.

In Hartman v. Moore, 547 U.S. 250 (2006), the Supreme Court analyzed First Amendment issues in the context of a Bivens claim. Specifically, the Court held that in order to state a Bivens claim for a wrongful prosecution in retaliation for the exercise of free speech rights, the Plaintiff must plead the absence of probable cause. Id. at 256-57. Nonetheless, courts, *including* the Third Circuit, routinely hold that the Supreme Court has not recognized a First Amendment Bivens claim. See, e.g., Mack v. Yost, 968 F.3d 311, 314 (3d Cir. 2020) ("In light of Abbasi and our recent precedents, we decline to expand Bivens to create a damages remedy for [the plaintiff]'s First Amendment retaliation claim."); Loumiet v. United States, 948 F.3d 376, 382 (D.C. Cir. 2020) (holding that despite Hartman assuming a First Amendment Bivens claims existed, the Supreme Court has not recognized a First Amendment Bivens claims); Johnson v. Burden, 781 F. App'x 833, 836 (11th Cir. 2019) (rejecting argument that Hartman recognized a Bivens First Amendment retaliation claim). In fact, the Supreme Court itself has stated it has "never held that Bivens extends to First Amendment claims." Reichle v. Howards, 566 U.S. 658, 663 n.4 (2012). The Court in Abbasi reiterated that "Bivens, Davis, and Carlson . . . represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself," Abbasi,

13

137 S. Ct. at 1855, clearly indicating that <u>Farmer</u> does not stand for the proposition that a <u>Bivens</u> remedy should extend to a failure-to-protect claim.

The absence of any analysis in <u>Farmer</u> regarding whether to recognize a "conditions of confinement" <u>Bivens</u> claim also strongly suggests that the Supreme Court had no intention of recognizing such a claim. In other <u>Bivens</u> cases, the Court underwent an extensive analysis before extending <u>Bivens</u> or declining to do so. <u>See, e.g.</u>, <u>Bush v. Lucas</u>, 462 U.S. 367, 380-390 (1983) (examining in detail remedial structure put in place by Congress that precluded recognizing a <u>Bivens</u> claim); <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 485-486 (1994) (explaining why <u>Bivens</u> remedies are unavailable against federal agencies); <u>Carlson</u>, 446 U.S. at 19-23 (stating why the Federal Torts Claim Act did not preclude recognizing a Bivens claim). Such analysis is notably absent from the Court's discussion in <u>Farmer</u>. For these reasons, this Court is not swayed by the Third Circuit's determination in <u>Bistrain</u>.

In any event, the Third Circuit's decision in <u>Bistrian</u> predates <u>Egbert</u>. The Ninth Circuit in <u>Hoffman v. Preston</u>, 26 F.4th 1059, 1065 (9th Cir. 2022), acknowledged that a prisoner's failure-to-protect claim created a new <u>Bivens</u> context, but initially decided, based on its analysis of the factors discussed in <u>Abbasi</u>, that such claims should be recognized under <u>Bivens</u>. However, after the

14

Supreme Court issued its opinion in Ebgert, the Ninth Circuit superseded its opinion and affirmed the district court's dismissal of the complaint after determining that the "Supreme Court's decision in Egbert v. Boule precludes recognizing a Bivens remedy for [a prisoner's failure-to-protect] allegations." Hoffman v. Preston, 20-15396, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022).

In summary, the Court concludes that the Magistrate Judge is correct. Under Egbert, none of Plaintiff's Bivens claims are cognizable. Having so determined, the Court declines to consider whether the Magistrate Judge erred in concluding that Defendants are entitled to summary judgment regarding Plaintiff's claims of deliberate indifference to his serious medical needs.

### III. Conclusion

For the reasons stated, this Court agrees with the Magistrate Judge that Defendants are entitled to summary judgment on Plaintiff's Bivens claims.

The Court notes the lamentable position this decision puts Plaintiff in, and others like him, who allege they have suffered serious assaults and injuries in institutions where they are often powerless. To have the right to freedom from extreme intentional physical abuse or maltreatment without access to any realistic remedy is not consistent with fundamental principles of justice, in the Court's

view. Under the circumstances, however, the Court's hands are tied and it must apply governing law.

Accordingly, the R&R, [Doc. 198], is **ADOPTED** in part, and Defendants' motions for summary judgment, [Docs. 162 163, 164, 165, 167, 169, 170, 172, 173, 174], are **GRANTED IN FULL**.  The Clerk is **DIRECTED** to enter judgment in favor of Defendants. The Court is further **DIRECTED** to close this action.

It is **SO ORDERED** this 22nd day of March, 2023.

_____
**HONORABLE AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**